**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RICKY HILL,

                    Plaintiff,

        -against-

MAJOR LEAGUE SOCCER, LLC

                  Defendants.

Case No. 23-cv-02911 (JGK)(VF)

**DEFENDANT MAJOR LEAGUE SOCCER, L.L.C.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ...................................................................................1

RELEVANT PROCEDURAL HISTORY AND ALLEGATIONS ..................................3

  A.  Plaintiff Commences His Lawsuit in the Northern District of Illinois.............................. 3

  B.  Defendants Move to Dismiss Plaintiff's Complaint in the Northern District of Illinois ................................................................................................................. 4

  C.  Judge Alonso Grants Defendants' Motions and Transfers Plaintiff's Claims Against MLS to This District.................................................................................... 5

  D.  MLS Moves to Dismiss Plaintiff's Complaint for the Second Time, and Plaintiff Improperly Attempts to Amend his Complaint Through His Opposition ......................... 6

  E.  Plaintiff's Amended Complaint.............................................................................. 7

ARGUMENT .........................................................................................................8

  I.  PLAINTIFF'S AMENDED COMPLAINT STILL FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF AGAINST MLS ...................................................8

  A.  Plaintiff Does Not Allege That MLS Discriminated Against Him.................................... 9

  B.  Plaintiff's Allegations Regarding MLS's Single Entity Structure Do Not Salvage His Claims Against MLS ...................................................................................... 12

    1. MLS's Single Entity Structure Does Not Cure Plaintiff's Deficient Claims .............. 12

    2. Plaintiff Does Not Otherwise Plausibly Plead a Basis to Hold MLS Liable for the Hiring Decisions of the Team Operators ........................................................ 13

      a) MLS's Diversity Initiative Does Not Provide a Basis for Plaintiff's Failure to Hire Claims Against MLS .................................................................. 14

      b) Plaintiff's Allegations Regarding MLS's Approval of Team Operator Employee Contracts and Adherence to Certain MLS Rules Does Not Provide a Basis for Plaintiff's Claims Against MLS.................................................................. 16

  C.  Plaintiff's Disparate Impact Claim Fails as a Matter of Law ........................................... 18

  II.  PLAINTIFF'S TIME-BARRED CLAIMS SHOULD BE DISMISSED ...................19

  III.  PLAINTIFF'S CLAIMS AGAINST MLS SHOULD BE DISMISSED WITH PREJUDICE WITHOUT LEAVE TO AMEND ..........................................................19

CONCLUSION......................................................................................................20

CERTIFICATION OF COMPLIANCE .........................................................................22

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................9

*Brown v. Coach Stores, Inc.*,
  163 F.3d 706 (2d Cir. 1998)................................................................................18

*Comerica Leasing Corp. v. Bombardier Inc.*,
  No. 16-cv-614, 2019 WL 11027701 (S.D.N.Y. Sept. 30, 2019) .....................19, 20

*Conde v. Sisley Cosmetics USA, Inc.*,
  No. 11-Civ..................................................................................................................17

*Cont'l Cas. Co. v. Marshall Granger & Co.*,
  921 F. Supp. 2d 111 (S.D.N.Y. 2013)..................................................................13

*Cook v. Arrowsmith Shelburne, Inc.*,
  69 F.3d 1235 (2d Cir. 1995).................................................................................14

*Crisci-Balestra v. Civ. Serv. Emps. Ass'n, Inc.*,
  No. 07-cv-1684, 2008 WL 413812 (E.D.N.Y. Feb. 13, 2008) .............................8, 9

*Dewey v. PTT Telecom Netherlands, U.S., Inc.*,
  No. 94 CIV 5983 (HB), 1995 WL 425005 (S.D.N.Y. July 19, 1995) ...................16

*Ennis v. Tyco*,
  No. 02 Civ. 9070, 2004 WL 548796 (S.D.N.Y. Mar. 18, 2004) ...........................17

*Evans v. McDonalds Corp.*,
  936 F.2d 1087 (10th Cir. 1991) ............................................................................16

*Exum v. NYC Health & Hosps. Corp.*,
  No. 15 Civ. 3367 (BMC), 2015 WL 5695538 (E.D.N.Y. Sept. 28, 2015) ...........18

*Felder v. United States Tennis Ass'n Inc.*,
  No. 17-cv-5045, 2018 WL 5621484 (S.D.N.Y. Oct. 30, 2018).........................9, 10

*Ford v. N.Y.C. Transit Auth.*,
  No. 98-cv-4768, 2001 WL 930778 (E.D.N.Y. May 31, 2001), *aff'd sub nom.*
  43 F. App'x 445 (2d Cir. 2002) ........................................................................11, 12

*Fraser v. Major League Soccer L.L.C.*,
  284 F.3d 47 (1st Cir. 2002).........................................................................2, 6, 7, 13

ii

*Godlewska v. HDA*,
   916 F. Supp. 2d 246 (E.D.N.Y. 2013) ................................................................17

*Gordon v. City of New York*,
   No. 14-CV-6115 (JPO), 2015 WL 3473500 (S.D.N.Y. June 2, 2015) ....................19

*Grant v. Bloomberg L.P.*,
   No. 12-cv-6143, 2013 WL 1919584 (S.D.N.Y. May 2, 2013) ..................................9

*Henry v. N.Y.C. Health & Hosp. Corp.*,
   18 F. Supp. 3d 396 (S.D.N.Y. 2014)........................................................................9

*Hill v. AMB Sports & Entm't, LLC, et al.*,
   No. 22-cv-02961 (N.D. Ill.) ....................................................................................3

*Hill v. AMB Sports & Entm't, LLC*,
   No. 22-cv-02961, 2023 WL 2058066 (N.D. Ill. Feb. 16, 2023) ..............................5

*Homeless Patrol v. Joseph Volpe Family*,
   No. 09-cv-3628, 2010 WL 2899099 (S.D.N.Y. June 29, 2010), *aff'd*, 425 F.
   App'x 60 (2d Cir. 2011).........................................................................................19

*Karupaiyan v. CVS Health Corp.*,
   No. 19-cv-8814, 2021 WL 4341132 (S.D.N.Y. Sept. 23, 2021) .............................10

*Mahmud v. Kaufmann*,
   496 F. Supp. 2d 266 (S.D.N.Y. 2007)....................................................................19

*Martin v. Sprint United Mgmt. Co.*,
   273 F. Supp. 3d 404 (S.D.N.Y. 2017).....................................................................17

*Mills-Sanchez v. Research Foundation for State University of New York*,
   No. 18-cv-723, 2019 WL 2549726 (N.D.N.Y. June 20, 2019), *aff'd sub nom.
   Mills-Sanchez v. State University of New York Research Foundation*, 820 F.
   App'x 63 (2d Cir. 2020)..........................................................................................11

*Moody v. Empire Hotel Dev., Inc.*,
   No. 20-CV-02203 (PMH), 2023 WL 5480729 (S.D.N.Y. Aug. 24, 2023) .............18

*Musiello v. CBS Corp.*,
   518 F Supp. 3d 782 (S.D.N.Y. 2021)................................................................14, 15

*Raghavendra v. NLRB*,
   No. 08-cv-08120, 2009 WL 5908013 (S.D.N.Y. Aug. 27, 2009)...........................10

*Rasko v. N.Y.C. Admin. for Children's Servs.*,
   734 F. App'x 52 (2d Cir. 2018) ..............................................................................19

*Rodriguez v. Beechmont Bus Serv.*,
    173 F. Supp. 2d 139 (S.D.N.Y. 2001) .......................................................................19

*Smith v. Riccelli Brokerage Servs., LLC*,
    No. 09-cv-0023, 2011 WL 2007209 (W.D.N.Y. May 23, 2011) ...............................10

*Smith-Crockett v. CT Tech. High Sch.*,
    No. 18-cv-01640, 2019 WL 13293209 (D. Conn. Sept. 24, 2019) ...................10, 11

*Stanley v. Direct Energy Servs. LLC*,
    466 F. Supp. 3d 415 (S.D.N.Y. 2020) .......................................................................20

*TechnoMarine SA v. Giftports, Inc.*,
    758 F.3d 493 (2d Cir. 2014) ......................................................................................20

*Verdon v. Consol. Rail Corp.*,
    828 F. Supp. 1129 (S.D.N.Y. 1993) ............................................................................2

## STATUTES

42 U.S.C. § 1981 .................................................................................................... passim

Civil Rights Act of 1964 Title VII, 42 U.S.C. § 2000e. ......................................... passim

Illinois Human Rights Act, 775 ILCS 5/101. ...............................................................3, 5

## OTHER AUTHORITIES

Fed. R. Civ. P. 8(a) .................................................................................................4, 5, 8

Fed. R. Civ. P. 8(a)(2) ...............................................................................................8, 9

Fed. R. Civ. P 12(b)(3) ..................................................................................................4

Fed. R. Civ. P 12(b)(6) ...............................................................................................4, 5

Defendant Major League Soccer, L.L.C. (incorrectly sued as "Major League Soccer, LLC") ("MLS" or the "League") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff Ricky Hill's ("Plaintiff") amended complaint dated January 30, 2024. (ECF No. 116, "Am. Compl." or "Amended Complaint.")

## PRELIMINARY STATEMENT

Plaintiff asserts claims of alleged race discrimination for failure to hire under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII") and 42 U.S.C. § 1981 ("Section 1981") based on hiring decisions made by three different organizations: AMB Sports & Entertainment, LLC ("Atlanta United"), Inter Miami CF, LLC ("Inter Miami"), and Tepper Sports & Entertainment ("Charlotte FC") (collectively, the "Team Operators"). None of those Team Operators are defendants in the Amended Complaint. Instead, Plaintiff asserts his claims against MLS. Plaintiff's Amended Complaint contains detailed allegations concerning his interactions with each of the Team Operators and identifies specific individuals who he claims were involved in the decisions not to hire him for various coaching positions. Although MLS is the sole defendant named in Plaintiff's Amended Complaint, Plaintiff does not allege that he ever interacted with anyone from MLS in connection with his efforts to seek employment with the Team Operators or otherwise. Because a plaintiff must have applied for a position with a defendant to state a claim for failure to hire against that defendant and Plaintiff does not (and cannot) allege that he applied for a job with MLS, his claims against MLS should be dismissed with prejudice.

Plaintiff's suggestion that he can bring his claims against MLS because of its single entity structure does not salvage his claims. It is the Team Operators, and only the Team Operators, who hire and employ coaches in the League. Nothing in MLS's single entity structure changes that or places MLS in that position. Indeed, all of MLS's structural documents – including its Constitution

upon which Plaintiff purportedly relies – make plain that the League does no such thing.[1] Therefore, as the Honorable Jorge L. Alonso noted in his well-reasoned decision, the applicable question is whether there are facts in the Amended Complaint from which it could reasonably be inferred that MLS "was responsible for its members hiring practices." (ECF No. 87 at 17.) There are not. Plaintiff's reliance on MLS's initiative aimed at increasing diversity in the candidate pool for coaches, MLS's approval of Team Operator employee contracts and MLS's rules being applicable to Team Operator employees does not meet this standard because these facts do not plausibly suggest that MLS was in any way involved in – let alone responsible for – any of the Team Operators' decisions not to hire Plaintiff. It therefore follows that Plaintiff does not and cannot hold MLS liable for the Team Operators' hiring decisions based on his single employer theory.

Finally, Plaintiff cannot assert a claim for disparate impact against MLS based on his "non-intervention" theory because he admittedly cannot identify any MLS policy that impacted any Team Operator's decision not to hire him.

Plaintiff's claims against MLS should therefore be dismissed with prejudice in their entirety and Plaintiff should not be granted further leave to amend.

---

[1] Plaintiff's reliance now on MLS's single entity structure as a basis for his single employer theory with respect to Plaintiff (or coaching applicants more generally) is directly contradicted by a source known to and cited by him in his opposition to MLS's last motion to dismiss. *Fraser v. Major League Soccer L.L.C.*, 284 F.3d 47 (1st Cir. 2002). In the event MLS succeeds on the instant motion, MLS reserves all rights to seek sanctions from Plaintiff for attorneys' fees and costs associated with making this motion given that Plaintiff pursued claims based on a theory he knew was unsupported. *See Verdon v. Consol. Rail Corp.*, 828 F. Supp. 1129, 1141 (S.D.N.Y. 1993) (sanctioning plaintiff's attorney for failure to investigate existing law before bringing claims before the Court).

## RELEVANT PROCEDURAL HISTORY AND ALLEGATIONS[2]

### A. Plaintiff Commences His Lawsuit in the Northern District of Illinois

On June 6, 2022, Plaintiff commenced his lawsuit in the Northern District of Illinois alleging race discrimination under Title VII,[3] Section 1981 and the Illinois Human Rights Act, 775 ILCS 5/101 *et seq.* ("IHRA") against the Team Operators, MLS and United Soccer Leagues, LLC ("USL") and three USL Clubs – Las Vegas Soccer, LLC, Memphis 901 FC LLC, and Prodigal Soccer LLC.  *See Hill v. AMB Sports & Entm't, LLC, et al.*, No. 22-cv-02961 (N.D. Ill.) (the "Northern District of Illinois Action").  (*See* ECF No. 1 (hereafter referred to as "Complaint" or "Compl.").)

Plaintiff alleged that "[d]uring the past several years, he has applied for coaching and technical positions at each of the US professional men's soccer clubs named as defendants in this lawsuit" (Compl. ¶ 2), and that, at various points in time, each of those clubs individually discriminated against him on the basis of his race when they did not hire him for a position within their respective clubs.  (*Id.* ¶¶ 27-141.)  In his Complaint, Plaintiff set forth the factual allegations as to each of the six clubs' hiring decisions that he alleged were discriminatory.  (*See id.* ¶¶ 27-45 (Atlanta United); ¶¶ 46-69 (Inter Miami); ¶¶ 70-89 (Las Vegas); ¶¶ 90-106 (Memphis); ¶¶ 107-30 (OKC); ¶¶ 131-41 (Charlotte FC).)  Plaintiff did not make any such allegations regarding MLS (or USL).

---

[2] MLS assumes the truth of Plaintiff's well-pleaded allegations only for purposes of this motion.  MLS does not concede the accuracy or adequacy of any allegations in the Amended Complaint.

[3] Plaintiff filed a discrimination charge against MLS with the Equal Employment Opportunity Commission ("EEOC") in November 2021.  (Compl. ¶ 16; Am. Compl. ¶ 14.)

Despite Plaintiff's tacit admission that MLS was not involved in any of the alleged hiring decisions he alleges were discriminatory, Plaintiff brought discrimination claims against MLS by vaguely alleging that MLS "actually participated in and aided and abetted the discriminatory conduct of the other Defendants" and that MLS is an "employer" under Title VII.  (*Id*. ¶¶ 155-57, 169.)[4]  Plaintiff, however, failed to provide any facts to support these conclusory allegations.

### B.  Defendants Move to Dismiss Plaintiff's Complaint in the Northern District of Illinois

All defendants in the Northern District of Illinois Action moved to dismiss Plaintiff's claims on various grounds.

- The defendant clubs moved to dismiss for lack of personal jurisdiction.  (ECF Nos. 19 (OKC); 38 (Memphis); 46 (Inter Miami); 48 (Atlanta United); 54 (Charlotte FC); 61 (Las Vegas).)

- USL moved to dismiss the claims against it for failure to satisfy Federal Rule of Civil Procedure 8(a) and because Plaintiff "fail[ed] to offer any factual allegations to suggest that [USL] . . . knew of the other seven defendants' alleged discriminatory conduct, let alone aided and abetted said conduct."  (ECF No. 65 at 3-4.)

- MLS moved to dismiss Plaintiff's claims pursuant to Rule 12(b)(3) for improper venue and to transfer the claims against MLS to this District (where MLS is headquartered).  (ECF No. 50.)[5]  MLS alternatively moved to dismiss the Complaint for failure to state a claim under Rules 12(b)(6) and 8(a).  (*Id*.)  MLS expressly stated that in the event the "Court decides to

---

[4] Plaintiff's claims against USL were based on nearly identical allegations as those against MLS.  (Compl. ¶¶ 143-44, 149-53.)

[5] The references to the docket in the Northern District of Illinois Action are the same as in this Action because the docket in the Northern District of Illinois Action was transferred to this Action.  (ECF No. 88.)

transfer Plaintiff's claims against MLS, it need not decide whether Plaintiff states a claim as to MLS; instead, the transferee court would decide the sufficiency of the pleading."  (ECF No. 50-1 at 4 n.5.)

### C. Judge Alonso Grants Defendants' Motions and Transfers Plaintiff's Claims Against MLS to This District[6]

On February 16, 2023, Judge Alonso issued a Memorandum Opinion & Order in which he (i) dismissed Plaintiff's claims against the defendant clubs for lack of personal jurisdiction; (ii) dismissed Plaintiff's claims against USL because Plaintiff did not allege that he applied for a job with USL and alleged no facts from which it could reasonably be inferred that USL was responsible for its clubs' hiring practices; and (iii) granted MLS's motion and transferred Plaintiff's claims against MLS to this District.  (ECF No. 87 at 6-18.)[7]  Because Judge Alonso determined that venue as to MLS was improper in the Northern District of Illinois, he did not reach the merits of MLS's alternative motion to dismiss under Rules 12(b)(6) and 8(a).  (*Id.* at 17.)  Judge Alonso noted as dicta, however, that Plaintiff "does not allege that MLS had any control over [its] clubs with respect to hiring decisions and further does not allege that MLS or any MLS employee participated in any decisions with respect to [Plaintiff's] non-hiring."  (*Id.* at 15.)  Judge Alonso dismissed Plaintiff's claims without prejudice and therefore provided Plaintiff with the opportunity to amend his

---

[6] Judge Alonso's February 16, 2023 Memorandum Opinion & Order is available on commercial databases.  *See Hill v. AMB Sports & Entm't, LLC*, No. 22-cv-02961, 2023 WL 2058066 (N.D. Ill. Feb. 16, 2023).  For ease of reference, however, MLS cites herein to the version filed on the docket.

[7] In his opposition, Plaintiff withdrew his IHRA claim after Defendants moved to dismiss on the grounds that Plaintiff (i) failed to exhaust his administrative remedies; and (ii) failed to allege that Defendants qualified as "employers" under the IHRA.  (ECF No. 87 at 6.)  Judge Alonso dismissed Plaintiff's IHRA claim with prejudice as a result.

Complaint as to the claims against the defendant clubs and USL.  (*Id*. at 18.)  Plaintiff did not file an amended complaint.

On March 27, 2023, Plaintiff's claims against MLS were officially transferred to this District.  (ECF No. 88.)  This Court held a status conference on April 18, 2023.  (*See* ECF No. 90.)  During that conference, MLS expressed its intention to file a motion to dismiss Plaintiff's Complaint – the same Complaint addressed by Judge Alonso's decision in the Northern District of Illinois Action.  At no time did Plaintiff's counsel indicate a desire to file an amended complaint even after having the benefit of MLS's prior motion to dismiss and Judge Alonso's order.  This Court then set a briefing schedule for MLS's motion.  (ECF No. 94.)

### D. MLS Moves to Dismiss Plaintiff's Complaint for the Second Time, and Plaintiff Improperly Attempts to Amend his Complaint Through His Opposition

On May 16, 2023, MLS filed its second motion to dismiss Plaintiff's Complaint on the grounds that it failed to state a plausible claim for relief against MLS.  (ECF No. 96.)  In his untimely opposition, filed two months later on July 12, 2023, Plaintiff did not meaningfully respond to MLS's arguments in favor of dismissal of his Complaint.  (ECF No. 105.)  Instead, Plaintiff improperly attempted to amend his Complaint through his opposition in three respects.

First, Plaintiff alleged that MLS's "single-entity" structure allowed him to state a claim for relief against MLS.  In support of his argument, Plaintiff relied on sources that addressed MLS's single-entity structure with respect to ***players***, not coaches.  In fact, Plaintiff cited a case – *Fraser v. Major League Soccer L.L.C.*, 284 F.3d 47 (1st Cir. 2002) – that completely contradicted his theory and stated that, in contrast to the players, "**the [Clubs'] operator/investors hire, at their own expense and discretion, local staff (including the general managers and coaches of their respective teams) . . . .**" *Id.* at 54 (emphasis added).  Second, Plaintiff asserted a new claim for disparate impact based on his theory that MLS granted the Team Operators discretion in their

hiring decisions with respect to coaches.  Third, Plaintiff improperly submitted a declaration attaching discovery from an entirely different lawsuit against USL, not MLS, that he claimed established that USL was involved in its clubs' hiring decisions and as a result, MLS was somehow purportedly involved in its Team Operators' hiring decisions as well.

In its reply, MLS pointed out the fatal deficiencies with respect to each of Plaintiff's new theories.  (ECF No. 106 at 5-6.)  Notably, MLS advised Plaintiff that there were no facts to support his single entity theory with respect to Plaintiff (or coaches more generally) and specifically identified the language in *Fraser* that doomed any such theory.  MLS expressly reserved its right to seek sanctions if Plaintiff amended his Complaint to assert such a theory because he was on notice that any allegation that MLS employed coaches would be false.  (ECF No. 106 at n.6.)  MLS also argued that Plaintiff could not assert a claim for disparate impact based on his allegation that MLS left the hiring decisions for coaches to the Team Operators.  Finally, MLS refuted Plaintiff's argument that discovery in a case involving an entirely different soccer league allowed him to plausibly allege that MLS was involved in the MLS Team Operators' hiring decisions – particularly given that the evidence Plaintiff submitted did not demonstrate that USL was involved in hiring decisions by its member clubs.

This Court held a conference regarding Defendant's motion on January 11, 2024.  After Plaintiff acknowledged that his new theories were not pled in his Complaint, the Court provided Plaintiff with an opportunity to file an amended complaint by January 26, 2024.  The Court otherwise denied MLS's motion to dismiss without prejudice as moot.  (ECF No. 111.)

### E.  Plaintiff's Amended Complaint

Plaintiff filed his Amended Complaint on January 26, 2024.  Due to technical deficiencies, the Court rejected that complaint and the Court asked him to refile, which he did on January 30, 2024.  In his Amended Complaint, Plaintiff still challenges the specific hiring decisions made by

each of the three Team Operators and details his interactions with employees of those Team Operators in connection with his efforts to seek employment with them.  (Am. Compl. ¶¶ 47-66 (Atlanta United); ¶¶ 67-91 (Inter Miami); ¶¶ 92-103 (Charlotte FC).)  He still does not allege that he sought employment with MLS or that MLS was involved in any of the Team Operators' hiring decisions.  Instead, recognizing that no one from MLS had any involvement in any of the decisions not to hire him, Plaintiff purports to bring failure to hire claims against MLS because MLS has a single entity structure (*id*. at ¶¶ 3, 11-12, 28-29)  In support of his single entity theory, Plaintiff relies on provisions of MLS's Constitution pertaining to (i) an initiative aimed at increasing diversity in the candidate pool for coaches (*id*. at ¶ 31); and (ii) MLS's approval of employment contracts for Team Operator employees and requirement that Team Operator employees should comply with certain MLS rules (*id*. at ¶¶ 34-35).

Plaintiff also asserts a claim for disparate impact even though he still does not identify any facially neutral policy that impacted him.  Instead, he acknowledges that no such policy exists and bases his claim on MLS's delegation of "compliance with federal anti-discrimination law to its managers at the [Team Operator] level."  (*Id*. at ¶¶ 114-115.)

## ARGUMENT

### I.    PLAINTIFF'S AMENDED COMPLAINT STILL FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF AGAINST MLS

To survive a motion to dismiss for failure to state a claim, a complaint must first comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the plaintiff's claim is and the grounds upon which it rests in order to enable the opposing party to answer and prepare for trial, and to identify the nature of the case."  *Crisci-Balestra v. Civ. Serv. Emps. Ass'n, Inc*., No. 07-cv-1684, 2008 WL 413812, at *5 (E.D.N.Y. Feb. 13, 2008) (internal

quotation marks omitted).  In addition, the complaint must contain facts that are sufficient "to raise

a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint must be dismissed if it is "devoid of any factual content that would allow the Court

to draw the reasonable inference that the defendant is liable for unlawful discrimination." *Grant*

*v. Bloomberg L.P.*, No. 12-cv-6143, 2013 WL 1919584, at *2 (S.D.N.Y. May 2, 2013), *adopted*

*by* 2013 WL 3388509 (S.D.N.Y. July 8, 2013).

### A.      Plaintiff Does Not Allege That MLS Discriminated Against Him

Where, as here, Plaintiff does not allege that MLS discriminated against him or participated

in any discriminatory conduct, he cannot state a plausible claim for relief against MLS under Title

VII or Section 1981.  Courts in this District have dismissed similarly deficient claims on a motion

to dismiss.[8]  In *Crisci-Balestra*, 2008 WL 413812, at *6, the plaintiff brought discrimination claims

for failure to hire under Title VII, but the court granted the defendant's motion to dismiss because

the plaintiff did not allege "any discriminatory acts on [the] defendant's part."  As a result, the

court concluded that the plaintiff fell "far short of giving fair notice of her claim as required under

Rule 8(a)(2)," and dismissed the complaint in its entirety.  *Id.*; *see also Grant*, 2013 WL 1919584,

at *1 (granting motion to dismiss where plaintiff "provide[d] no allegations about [his] interaction

with the defendant").

---

[8] On a motion to dismiss, "Section 1981 discrimination claims are analyzed under the same substantive standard applicable to Title VII discrimination claims."  *Henry v. N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 410 (S.D.N.Y. 2014); *see also Felder v. United States Tennis Ass'n Inc.*, No. 17-cv-5045, 2018 WL 5621484, at *3 (S.D.N.Y. Oct. 30, 2018) (applying same pleading standard to failure-to-hire claims brought under Title VII and Section 1981).

In addition, to state a claim for failure to hire, Plaintiff must allege that he applied for and was denied a position with MLS. *See Felder*, 2018 WL 5621484, at *2-3. He does not – and cannot – do so. Indeed, Plaintiff's Complaint is devoid of both of these essential allegations as to MLS. Thus, his claims against MLS must be dismissed as a result. In *Felder*, the plaintiff alleged that the defendant did not hire him because of his race. The plaintiff, however, did not allege that he applied for a position with the defendant. *Id.*, at *3. Instead, he alleged that the defendant rejected the attempts of security service companies to secure a temporary security placement for him with the defendant. *Id.* The court granted the defendant's motion to dismiss because the plaintiff did not allege that he "applied for a position" with the defendant and thereafter was rejected. *Id.* at *10. The same is true here because Plaintiff does not allege that he ever sought employment with MLS, let alone applied for and was rejected from a specific position. *See also Karupaiyan v. CVS Health Corp.*, No. 19-cv-8814, 2021 WL 4341132, at *28 (S.D.N.Y. Sept. 23, 2021) (granting motion to dismiss failure-to-hire claim where plaintiff failed to allege "any facts suggesting that he actually applied for any open position" with defendant).

Plaintiff's claims against MLS also fail because he does not allege that MLS participated in any of the Team Operators' alleged decisions not to hire him.[9] Rather, he alleges that MLS

---

[9] To the extent that the Court construes Plaintiff's claims as ones for aiding and abetting, neither Title VII nor Section 1981 recognize such a claim. *See Raghavendra v. NLRB*, No. 08-cv-08120, 2009 WL 5908013, at *18-22 (S.D.N.Y. Aug. 27, 2009) (no aiding and abetting liability under Section 1981); *see also Smith v. Riccelli Brokerage Servs., LLC*, No. 09-cv-0023, 2011 WL 2007209, at *5 (W.D.N.Y. May 23, 2011) ("[I]t is clear that Title VII does not provide for aider and abettor liability."). Moreover, MLS, as the only defendant remaining in this action, cannot aid and abet itself. *See Smith-Crockett v. CT Tech. High Sch.*, No. 18-cv-01640, 2019 WL 13293209, at *6 (D. Conn. Sept. 24,

"failed to take any steps to see that its mandatory diversity initiative was followed, or otherwise ensure that Hill, as a similarly situated minority candidate, was given appropriate consideration . . . ."  (Am. Compl. ¶¶ 66, 91, 102.)  This is insufficient to state a failure to hire claim against MLS because Plaintiff still does not provide any basis for this Court to reasonably infer that MLS was responsible for the Team Operators' hiring decisions.  (*See* ECF No. 87 at 17) (dismissing claims against USL because Plaintiff "alleges no facts from which it could reasonably be inferred that USL was responsible for its members' hiring practices").  Additionally, in *Mills-Sanchez v. Research Foundation for State University of New York*, No. 18-cv-723, 2019 WL 2549726, at *8 (N.D.N.Y. June 20, 2019), *aff'd sub nom. Mills-Sanchez v. State University of New York Research Foundation*, 820 F. App'x 63 (2d Cir. 2020), the plaintiff asserted failure to hire claims against Research Foundation for the State University of ("RF SUNY") where she had worked and Research Foundation for Mental Hygiene ("RFMH").  After the plaintiff applied for numerous job openings at RF SUNY and RFMH, but did not receive any offers for those positions, she alleged that RF SUNY and RFMH shared "an electronic HR management system to 'blacklist and discriminate against [her] because of [her] prior opposition to racial discrimination[] and because of [her] race.'" *Id.*, at *3-4.  The court dismissed plaintiff's claims against RF SUNY arising out of RFMH's decision not to hire her because "nothing in [plaintiff's] Amended Complaint allow[ed] the court to reasonably infer that RF SUNY had authority to make hiring decisions at RFMH" and therefore "RF SUNY [could] not be liable for RFMH's refusal to hire plaintiff."  *Id.* *See also Ford v. N.Y.C. Transit Auth.*, No. 98-cv-4768, 2001 WL 930778, at *7 (E.D.N.Y. May

---

2019) ("Although courts in the Second Circuit have not had occasion to thoroughly address this claim in a Title VII action, it is a well-established legal principle that a party cannot aid and abet himself.").

31, 2001) (granting summary judgment to defendants on plaintiff's discrimination claims due to their lack of participation in separate entity's decision not to hire plaintiff), *aff'd sub nom.*  43 F. App'x 445 (2d Cir. 2002).

Accordingly, because Plaintiff does not allege that anyone at MLS engaged in any discriminatory conduct towards him in connection with his efforts to seek employment with the Team Operators, his claims against MLS should be dismissed with prejudice.

### B. Plaintiff's Allegations Regarding MLS's Single Entity Structure Do Not Salvage His Claims Against MLS

Recognizing that he does not and cannot allege any discriminatory conduct by MLS, Plaintiff attempts to hold MLS liable for the Team Operators' hiring decisions based on its single entity structure and certain provisions in the MLS Constitution regarding increasing diversity in the candidate pool for coaches, approval of Team Operator employee contracts and requiring Team Operator employees to adhere to certain MLS rules.  Plaintiff's attempts are unavailing.

*1.    MLS's Single Entity Structure Does Not Cure Plaintiff's Deficient Claims*

Plaintiff alleges that he can bring claims against MLS because MLS's single entity structure means that MLS owns the Team Operators.  (Am. Compl. ¶¶ 28-29.)  Plaintiff's theory fails because MLS's single entity structure does not mean that MLS hires or employs any of the coaches in the League.  It does not.  To the contrary, it is clear in MLS's Constitution – a key document setting out MLS's structure and cited by Plaintiff in his Amended Complaint – that all coaches are hired and employed by the Team Operators.  Indeed, it is the Team Operators who have both the sole right and obligation to hire and employ coaches.  These facts are fatal to Plaintiff's "failure to hire" claim in this action.

More specifically, under MLS's structural documents, it enters into agreements with Team Operators, which govern each Team Operator's relationship with MLS and incorporates MLS's

Constitution.  (Bloom Ex. A at 2.)  Each of the Team Operators are investors in MLS and are their own legal entities.  (*Id.*)  The operating agreement grants each Team Operator the right and obligation to conduct myriad activities in connection with the operation of a specific Club.  (*Id.*)  As relevant to this case, Section B. of the Introduction to the MLS Constitution, which governs Team Rights, expressly provides that the Team Operators employ their own respective coaches.  (*Id.*)[10]  Moreover, this relationship – that is, that the Team Operators hire and employ their coaches (and indeed have always done so for the history of the League) – is a matter of public and judicial record and known to Plaintiff.  *See Fraser*, 284 F.3d at 54 (discussing MLS's single entity structure regarding the League's employment of *players* while explaining that the Team Operators hire and employ *coaches* at their discretion).  This is consistent with Plaintiff's own allegations because the only people he identifies as being involved in the interview and hiring process for coaching positions are Team Operators employees.  (*See* Am. Compl. ¶¶ 4, 47-103.)[11]  Accordingly, MLS's single entity structure does not cure the deficiency of Plaintiff's claims and does not provide a basis for him to hold MLS liable for the Team Operators' hiring decisions.

> 2.    *Plaintiff Does Not Otherwise Plausibly Plead a Basis to Hold MLS Liable for the Hiring Decisions of the Team Operators*

In light of the above, in order for Plaintiff to hold MLS liable for the hiring decisions of the Team Operators, Plaintiff must plausibly allege that MLS and the Team Operators constitute a single employer such that MLS exerted control over the employment practices that impacted

[10] Plaintiff relies on the MLS Constitution in his Amended Complaint and it is therefore appropriate for the Court to consider another portion of the Constitution that refutes his allegations at the motion to dismiss stage.  *Cont'l Cas. Co. v. Marshall Granger & Co.*, 921 F. Supp. 2d 111, 117 (S.D.N.Y. 2013).

[11] Additionally, in his opposition to MLS's second motion to dismiss, Plaintiff acknowledged that MLS "left hiring decisions to the unchecked discretion of club managers." (ECF No. 105 at 12.)

Plaintiff.  The Second Circuit has adopted a four-part test to gauge whether a parent and subsidiary are a single employer, which is instructive here.  Courts look at "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management and (4) common ownership or financial control."  *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995).  The most critical factor is the centralized control of labor relations and the critical question to be answered is: **"What entity made the final decisions regarding employment matters related to the person claiming discrimination?"**  *Id*. at 1240-41 (internal quotations and citations omitted) (emphasis added).  At the pleading stage, a plaintiff must "plead facts supporting a reasonable inference that there is an amount of participation by the parent that is sufficient and necessary to the total employment process."  *Musiello v. CBS Corp.*, 518 F Supp. 3d 782, 790 (S.D.N.Y. 2021).  Plaintiff does not and cannot satisfy this standard with respect to his claims against MLS, and his reliance on MLS's diversity initiative, approval of Team Operator employee contracts and rules applicable to Team Operator employees is unavailing.[12]

> a)  MLS's Diversity Initiative Does Not Provide a Basis for Plaintiff's Failure to Hire Claims Against MLS

In the face of the undisputed fact that MLS's single entity structure does not alter the reality that Team Operators make the hiring decisions for and employ the coaches for their teams, Plaintiff attempts to hold MLS liable based on its diversity initiative in its Constitution aimed at

---

[12] "Conclusory *ipse dixit* assertions about the degree of control the parent exercised over the subsidiary do not satisfy the pleading standards as articulated in *Twombly* and *Iqbal.*" *Id*. (internal quotations and citations omitted).  Plaintiff's allegations regarding the remaining factors – common management, common ownership or financial control and interrelation of operations are wholly conclusory and do not come close to satisfying the remaining factors of the *Cook* test.  (Am. Compl. ¶¶ 105-108.)

"facilitat[ing] the process of consideration of minorities for coaching staff positions . . . ." (Am. Compl. ¶ 31.)  This diversity initiative, however, does not provide a reasonable basis for the Court to find that Plaintiff has plausibly alleged that MLS had any involvement in any of the Team Operators' decisions not to hire him.  *See Musiello*, 518 F Supp. 3d at 782, 790 (dismissing complaint where plaintiff failed to allege specific facts to support a reasonable inference that parent company participated in final decisions regarding her employment process at a subsidiary). Plaintiff's allegation that the Constitution required that Team Operators interview at least one minority candidate for coaching positions and that the Team Operators provide MLS with information related to those candidates who were interviewed and considered for the positions, Am. Compl. ¶¶ 30-31, does not provide any basis for the Court to conclude that MLS had any involvement in any of the Team Operators' decisions not to hire Plaintiff.  The Court's decision in *Musiello* is instructive here.  In *Musiello*, the Court found that the plaintiff's allegation that CBS Corporation promulgated, drafted and approved human resources and other policies for its subsidiaries and also monitored their compliance with such policies was insufficient to assert claims against CBS Corporation where the plaintiff did not allege that the policies were enforced within the subsidiary, let alone in connection with her employment, or that CBS Corporation had any say in the application of any general policy as to her.  518 F Supp. 3d at 791-92.  The same principles apply here, particularly given that Plaintiff alleges that the Team Operators did not comply with MLS's diversity initiative with respect to his alleged applications. (Am. Compl. ¶ 32.)  Regardless, even if MLS was provided with that information, the diversity initiative does not indicate that MLS had any involvement in the Team Operators' individual hiring decisions for coaches generally or with respect to Plaintiff.  Instead, the plain language cited by Plaintiff merely states that MLS can impose sanctions on a Team Operator that does not adhere to the requirements

imposed by the League to interview at least one diverse candidate for specified roles.  Because

Plaintiff cannot draw any connection between MLS's diversity initiative and the Team Operators'

decisions not to hire him, the diversity initiative cannot provide a basis for Plaintiff to bring his

failure to hire claims against MLS.

> b)  <u>Plaintiff's Allegations Regarding MLS's Approval of Team
> Operator Employee Contracts and Adherence to Certain MLS Rules
> Do Not Provide a Basis for Plaintiff's Claims Against MLS</u>

Plaintiff's reliance on Section 11 of the MLS Constitution in paragraphs 34 and 35 of his

Amended Complaint fares no better.  Plaintiff's allegation that MLS reviews and approves

employment contracts of Team Operator employees, including coaches, does not provide any basis

for Plaintiff to assert his failure to hire claims against MLS.  Notably, Plaintiff was never an

employee of any Team Operators and therefore cannot allege that he was impacted by this

provision of the MLS Constitution.  Plaintiff's allegation that MLS approved the employment

contracts of those who were hired instead of him does not salvage his claim because he still does

not allege a single fact that could allow the Court to reasonably infer that MLS exerted control

over any of the hiring decisions themselves.  *See Evans v. McDonalds Corp.*, 936 F.2d 1087 (10th

Cir. 1991) (rejecting single employer theory where defendant exercised necessary control over

conformity to standard operational details and did not have control over employment decisions

regarding franchise employees); *Dewey v. PTT Telecom Netherlands, U.S., Inc.*, No. 94 CIV. 5983

(HB), 1995 WL 425005 (S.D.N.Y. July 19, 1995) (granting motion to dismiss where subsidiary

informed parent of hiring and termination decisions because this did not show that the parent

exercised control over subsidiary's employment practices).

The same is true regarding Plaintiff's allegation that Team Operator employees are

expected to abide by certain MLS rules.  Plaintiff was never a Team Operator employee and

therefore was never impacted by this provision of the Constitution.  Regardless, the fact that MLS

requires Team Operator employees to abide by certain rules is insufficient to render MLS liable

for the Team Operators' employment decisions.  *See Conde v. Sisley Cosmetics USA, Inc.*, No. 11-

Civ. 4010 (RJS), 2012 WL 1883508, at *5 (S.D.N.Y. May 22, 2012) (dismissing plaintiff-Sisley

employee's claims against Saks where plaintiff alleged Saks officials directed her how to dress

and monitored the premises to ensure compliance with Saks' dress and appearance standards); *see

also Ennis v. Tyco*, No. 02 Civ. 9070, 2004 WL 548796, at *4 (S.D.N.Y. Mar. 18, 2004) ("The

mere fact that [plaintiff] agreed to be bound by certain standards of conduct set forth by Tyco does

not indicate that Tyco exercised control over or made final decisions regarding the employment of

[plaintiff] . . . .").  *See also Martin v. Sprint United Mgmt. Co.*, 273 F. Supp. 3d 404, 426 (S.D.N.Y.

2017) (general conduct standards for purposes of quality control do not give rise to an employer-

employee relationship); *Godlewska v. HDA*, 916 F. Supp. 2d 246, 259 (E.D.N.Y. 2013)

("Exercising quality control by having strict standards and monitoring compliance with those

standards does not constitute supervising and controlling employees' work conditions.").

Accordingly, Plaintiff cannot rely on this provision of the Constitution to bring his failure to hire

claims against MLS.

***

Because MLS's single entity structure does not cure the deficiencies of Plaintiff's claims,

and Plaintiff's reliance on MLS's Constitution does not provide any basis for this Court to find

that Plaintiff has plausibly alleged that MLS exerted control over any of the Team Operators'

employment decisions at issue, his claims against MLS should be dismissed. [13]

---

[13] Plaintiff does not allege that MLS and the Team Operators are joint employers but even if he did, he could not hold

MLS liable for employment actions that it did not control under such a theory.  *See, e.g.*, *Moody v. Empire Hotel Dev.*,

### C.  Plaintiff's Disparate Impact Claim Fails as a Matter of Law

To state a claim for disparate impact under Title VII, "a plaintiff must (1) identify a specific employment practice or policy, (2) demonstrate that a disparity exists, and (3) establish a causal relationship between the two."  *Exum v. NYC Health & Hosps. Corp.*, No. 15 Civ. 3367 (BMC), 2015 WL 5695538, at *2 (E.D.N.Y. Sept. 28, 2015).  A plaintiff must at least set forth enough factual allegations to plausibly support each of the three basic elements of a disparate impact claim. It is well-established that "[a]llegations which contend only that there is a bottom line racial imbalance in the work force are insufficient" to establish a disparate impact claim.  *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998) (internal citations omitted).

Plaintiff has failed to plausibly allege all three elements of a *prima facie* claim for disparate impact.  Most notably, Plaintiff has not identified a specific employment practice or policy by MLS that impacted any decision to not hire him by any of the Team Operators.  To the contrary, Plaintiff's claims against MLS are premised on a completely contradictory theory, i.e., that MLS had a policy of "non-intervention" and left compliance with anti-discrimination laws to Team Operator managers. (Am. Compl. ¶ 114.)  Plaintiff's failure to identify a facially neutral policy effectuated by MLS requires dismissal of his disparate impact claim.  *See Rodriguez v. Beechmont Bus Serv.*, 173 F. Supp. 2d 139, 147-48 (S.D.N.Y. 2001) (granting motion to dismiss disparate impact claim where plaintiff failed to identify a facially neutral policy that had a disparate impact

---

*Inc.*, No. 20-CV-02203 (PMH), 2023 WL 5480729 (S.D.N.Y. Aug. 24, 2023) (plaintiffs worked for Hyatt franchise hotel and the court granted judgment in favor of Hyatt defendants, finding that Hyatt defendants were not joint employers where "it was clear that the Hyatt Defendants did not exercise control over [Plaintiffs'] employment").

on a protected class of individuals); *Gordon v. City of New York*, No. 14-CV-6115 (JPO), 2015 WL 3473500, at *11 (S.D.N.Y. June 2, 2015) (same).  It therefore follows that Plaintiff cannot satisfy the second and third elements of a *prima facie* claim and demonstrate any non-existent policy impacted him.

## II.     PLAINTIFF'S TIME-BARRED CLAIMS SHOULD BE DISMISSED

To the extent the Court does not dismiss Plaintiff's claims against MLS in their entirety, his claims pre-dating January 13, 2021 – 300 days before he filed his EEOC Charge on November 9, 2022, *see* p. 2 n.2, *supra*, should be dismissed as untimely.  (*See, e.g.*, Am. Compl. ¶¶ 48- 52; 67-73); *Rasko v. N.Y.C. Admin. for Children's Servs.*, 734 F. App'x 52, 54 (2d Cir. 2018) (acts of discrimination that occurred 300 days prior to filing of plaintiff's EEOC charge are time-barred).

In addition, to the extent that Plaintiff's Section 1981 claim arises from decisions that allegedly occurred before June 6, 2019 – *i.e.*, three years before Plaintiff filed his Complaint – such allegations are also time-barred.  *Homeless Patrol v. Joseph Volpe Family*, No. 09-cv-3628, 2010 WL 2899099, at *42 (S.D.N.Y. June 29, 2010), *aff'd*, 425 F. App'x 60 (2d Cir. 2011) (citing *Mahmud v. Kaufmann*, 496 F. Supp. 2d 266, 270-72 (S.D.N.Y. 2007)) (discriminatory hiring claims under Section 1981 are subject to a three-year statute of limitations).

## III.    PLAINTIFF'S CLAIMS AGAINST MLS SHOULD BE DISMISSED WITH
##         PREJUDICE WITHOUT LEAVE TO AMEND

Where, as here, "a party has not cured deficiencies in a previous pleading, after having been put on notice of those deficiencies, leave to amend may be properly denied."  *Comerica Leasing Corp. v. Bombardier Inc.*, No. 16-cv-614, 2019 WL 11027701, at *16 (S.D.N.Y. Sept. 30, 2019).  Plaintiff has had ample opportunities to cure the glaring deficiencies in his Complaint. Plaintiff has been on notice of the deficiencies in his Complaint since MLS filed its first motion to dismiss on August 26, 2022, or at the very least since Judge Alonso issued his decision on the first

motions to dismiss on February 16, 2023.  Plaintiff made no efforts to amend his Complaint in the Northern District of Illinois Action or after his claims against MLS were transferred to this District. Instead, Plaintiff let MLS file a second motion to dismiss and then impermissibly attempted to amend his Complaint through his opposition.  As a result, this Court provided Plaintiff with a second opportunity to amend his Complaint to add the theories asserted in his opposition. Plaintiff's Amended Complaint still suffers from the same defects as his original Complaint because there is no plausible basis for his claims against MLS.  As set forth in Section I. B. 2. a), *supra*, Plaintiff cannot allege—and has not alleged—that MLS had any involvement in any of the Team Operators' decisions not to hire him.  As a result, Plaintiff's claims against MLS should be dismissed with prejudice and he should not be afforded leave to amend.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 506 (2d Cir. 2014) (affirming dismissal with prejudice where "Plaintiff already amended its complaint once following Defendant's first motion to dismiss for failure to state a claim" and "failed to resolve its pleading deficiencies" in its amended complaint); *Stanley v. Direct Energy Servs. LLC*, 466 F. Supp. 3d 415, 439 (S.D.N.Y. 2020) ("As Plaintiff has already amended her Complaint once, the dismissal is with prejudice.").

## <u>CONCLUSION</u>

For the foregoing reasons, MLS respectfully requests that this Court enter an Order: (i) dismissing Plaintiff's Amended Complaint against MLS in its entirety, with prejudice; and (ii) granting such other and further relief as the Court deems just and proper.


Dated:  February 13, 2024
      New York, New York

                          Respectfully submitted,

                          */s/ Elise M. Bloom*
                          Elise M. Bloom
                          Noa M. Baddish
                          PROSKAUER ROSE LLP

Eleven Times Square
New York, New York 10036
Tel. 212.969.3000
Fax 212.969.2900
ebloom@proskauer.com
nbaddish@proskauer.com

*Attorneys for Defendant*
*Major League Soccer,*
*L.L.C.*

## <u>CERTIFICATION OF COMPLIANCE</u>

I, Elise M. Bloom, one of the attorneys for Major League Soccer, L.L.C., hereby certify that, in compliance with Rule II.D. of this Court's Individual Practices, this memorandum of law (excluding the cover page, certification of compliance, table of contents, and table of authorities) contains 6,507 words, as counted by the Microsoft Word word-processing program.

Dated:  February 13, 2024
    New York, New York

                                */s/ Elise M. Bloom*
                                Elise M. Bloom